[Cite as *State ex rel. Vonderheide v. Multi-Color Corp.*, 2018-Ohio-1714.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Sharon Vonderheide, | : | |
| Relator, | : | |
| v. | : | No. 16AP-493 |
| Multi-Color Corporation and | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio, | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on May 3, 2018

**On brief:** *Clements, Taylor, Butkovich & Cohen LPA, Co.,* and *Edward Cohen,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} Relator, Sharon Vonderheide, filed this original action seeking a writ of mandamus that would order respondent, Industrial Commission of Ohio ("the commission"), to vacate the December 10, 2014 order of its staff hearing officer ("SHO") denying her application for temporary total disability ("TTD") compensation beginning July 31, 2012, and to find she is entitled to that compensation. At issue is whether the work Vonderheide performed at her family's farm qualifies as employment, such that she was a part of the active workforce immediately prior to the time for which she requested TTD compensation.

{¶ 2} Vonderheide argues "[t]here is no proper or competent evidence of the record which supports [the commission's] denial" of the TTD compensation she requests, and,

therefore, the commission abused its discretion in denying her request. (Jul. 5, 2016 Compl. at ¶ 8.)

{¶ 3} We referred this matter to a magistrate of this Court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate concluded the commission did not abuse its discretion in denying Vonderheide's application for TTD compensation and decided this Court should deny Vonderheide's request for a writ of mandamus.

{¶ 4} Vonderheide timely filed an objection to the magistrate's findings and memorandum in support. The commission timely filed a memorandum opposing Vonderheide's objection, asserting the objection lacked merit, and the magistrate had decided the matter correctly.

{¶ 5} Having examined the magistrate's decision, conducted an independent review of the record pursuant to Civ.R. 53, and undertaken due consideration of the objection, we sustain Vonderheide's objection and grant a writ of mandamus ordering the commission to vacate the SHO's order denying TTD compensation.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 6} No one disputes, on June 28, 1992, Vonderheide sustained an industrial injury claim in the course of and arising out of her employment with respondent, Multi-Color Corporation. Vonderheide's claim was allowed for "lumbar sprain; medial collateral left knee ligament sprain; right knee loose body/enthesopathy; popliteal cyst both knees; contusion right knee; medial meniscus tear right knee; chondromalacia right knee; osteoarthritis lower leg, bilateral; right knee infection/hardware; and right knee instability." (Compl. at ¶ 4.) Vonderheide was awarded TTD compensation. That compensation was terminated on December 23, 2002, when Vonderheide had reached maximum medical improvement ("MMI") for the industrial injury.

{¶ 7} Vonderheide was enrolled in a vocational rehabilitation plan in 2003, but her rehabilitation file was closed on November 26, 2003 after she voluntarily withdrew from the rehabilitation program.

{¶ 8} Vonderheide filed for and began receiving Social Security retirement benefits in August 2002 and continues to receive those benefits to the present time.

{¶ 9}   Vonderheide underwent surgery for her right knee on July 31 and November 6, 2012.  Her claim was amended in January 2013 to include right knee infection/hardware.

{¶ 10} On March 12, 2014, Vonderheide filed a motion requesting TTD compensation be reinstated beginning July 31, 2012 based upon a significant change in circumstance.  In support of the motion, Vonderheide provided medical evidence from various physicians, computer generated summaries of her Ohio tax returns from 2004 through 2007, and from 2009 through 2012, and Internal Revenue Service ("IRS") tax return transcripts for the years 2009 and 2010.  The IRS forms evidenced income in the form of rent/royalty/partnership/estate.

{¶ 11} Vonderheide also supported her TTD request by providing affidavits of herself and her son, Michael Vonderheide.  In her own affidavit, Vonderheide stated she had worked, sought work, or participated in vocational rehabilitation between 2002 and 2012.  She described how she had worked with her husband on their farm while he was alive and how she had continued to work and help run the farm after his death.  She stated she began working exclusively at the farm after her medical condition began to deteriorate in 2002. Michael Vonderheide's affidavit corroborated his mother's account of the worked she performed on the family farm.  He averred, from 2003 through 2012, he had worked with his mother on their family farm year-round, during which time he had personally witnessed his mother "doing a variety of tasks involved with running and working the farm, including driving a tractor, running the business of the farm, organizing and ordering work crews, farming and stripping tobacco, etc."  (M. Vonderheide Aff. at ¶ 3, Sept. 8, 2016 Stipulation of Evidence at 20950-L21.)  He averred further, "[t]o my knowledge, my mother continued in this occupation until the end of July 2012 when she had serious knee surgery; to my knowledge, she has not worked on the farm since that date."  *Id.* at ¶ 4.

{¶ 12}  A commission district hearing officer ("DHO") heard Vonderheide's motion for TTD compensation on October 27, 2014.  The DHO denied the motion by order issued on October 30, 2014 based on findings that Vonderheide: (1) had "not provided sufficient evidence" to corroborate her testimony she was working on the family farm from November 2003 through the time period immediately prior to the requested period of TTD in this claim, (2) had "not provided sufficient evidence that she worked or tried to be employed since November, 2003," (3) had been on Social Security retirement "since that time," and

(4) "was not removed from the workforce as a result of the newly allowed condition in this claim." (Stipulation of Evidence at 20950-L11.) The DHO concluded Vonderheide had failed to satisfy her burden of proving by a preponderance of the evidence she was entitled to the award of TTD in this claim.

{¶ 13} A commission SHO heard Vonderheide's appeal of the DHO order on December 4, 2014. At the hearing, Vonderheide testified as to the year-round working nature of the family farm on which Vonderheide, her husband, and her son had grown hay and tobacco and, until her husband's death in 2009, raised cows. She described the work she performed on the farm before and after her husband's death. She testified how the income derived from the farming enterprise was distributed. Vonderheide also testified to her efforts to find employment away from the farm after her industrial injury. She testified she was actively working at the farm from 2009 until her surgery and had worked at the farm as recently as two weeks before the SHO hearing.

{¶ 14} Vonderheide's son also testified at the SHO hearing as to his involvement with the farm operation, the work he had seen Vonderheide perform at the farm, and how and when the farm income was distributed.

{¶ 15} By order issued December 10, 2014, the SHO affirmed the DHO order and denied Vonderheide's request for TTD compensation. The SHO stated the applicable legal standard as follows:

> The Hearing Officer notes that [Vonderheide] has the burden of establishing with medical evidence that she is temporarily and totally disabled as a result of the allowed conditions in the claim and that she is legally entitled to the payment of [TTD] compensation because she is in the work force at the time that she is requesting compensation begin. The industrial injury must remove [Vonderheide] from the work force and the purpose of [TTD] compensation is to replace the wages she has lost.

(Stipulation of Evidence at 20950-L60.)

{¶ 16} The SHO found Vonderheide had not established she was legally eligible for TTD compensation because she had failed to meet her burden of proof establishing she was in the active workforce and had wages to replace as of July 31, 2012. The SHO was not persuaded by Vonderheide's claim she worked at the family farm, specifically noting Vonderheide's testimony she did not live at the farm and did not receive wages on a regular

basis for her work.  The SHO found Vonderheide had not established her ownership of, and participation in, the family farm evidenced she was in the workforce and receiving wages. The SHO stated:

> The Hearing Officer concludes that the farm was, and continues to be, a passive investment that [Vonderheide] has which she sometimes performed chores on. The Hearing Officer finds that this is not evidence that [Vonderheide] was in the work force and actively working prior to the date that she is requesting [TTD] compensation begin. The Hearing Officer finds that there were no wages to replace as of 07/31/2012. Therefore, the Hearing Officer finds that [Vonderheide] is not entitled to the payment of temporary total disability compensation. The Hearing Officer orders that the C-86 Motion is denied.
>
> This order is based upon the lack of evidence of employment, the BWC claim notes dated 03/21/2014, [*State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245; *State ex rel. Corman v. Allied Holdings, Inc.,* 132 Ohio St.3d 202, 2012-Ohio-2579; and *State ex rel. Hoffman v. Rexman Beverage Can Co.,* 137 Ohio St.3d 129 (2013)].

*Id.* at 20950-L61.

{¶ 17} Vonderheide's further appeal was refused by order of the commission mailed December 31, 2014.

{¶ 18} On July 5, 2016, Vonderheide filed this mandamus action asserting the commission's denial of her TTD compensation request is unsupported by "proper or competent evidence of record" and constitutes an abuse of discretion.  (Compl. at ¶ 8.)

{¶ 19} The magistrate's decision discusses the law governing an award of TTD compensation:

> TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

(App'x at ¶ 56.) The magistrate's decision indicates further "[t]here can be no lost wages, or even the potential for lost wages, if the injured worker is no longer a part of the active workforce. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245." *Id.* at ¶ 57.

{¶ 20} After reciting the findings on which the SHO relied to affirm the DHO's order denying Vonderheide's request for TTD compensation, the magistrate assessed the evidence Vonderheide had provided about her work at the farm, stating:

> In the present case, the commission found that [Vonderheide] failed to establish that she was receiving wages immediately prior to her claimed period of disability and was, therefore, ineligible to receive TTD compensation. At the hearing before the SHO, [Vonderheide] specifically testified that, after her husband died in 2009, she sold the cattle and leased the farm property to others. From that time on, [Vonderheide] did continue to maintain the property by cutting the grass and performing upkeep on the family home located on the property. This activity does not necessarily constitute work for purposes of TTD compensation. Grass needs to be cut and a house must be maintained, but these are every day tasks everyone performs. [Vonderheide] did not testify that she still planted seeds, cut and hung the tobacco in the barn to dry, and remove the leaves from the stalks. None of [Vonderheide's] testimony nor the tax information she submitted, nor her affidavit, nor the affidavit of her son proves that, after she leased out the property and sold the cattle, that she actually worked on the farm. Although [Vonderheide] indicated that she was working until the surgeries in 2012, as the SHO said, the evidence was conflicting.

*Id.* at ¶ 58.

{¶ 21} The magistrate noted the paucity of tax records Vonderheide provided documenting farm income, commenting "[i]f [Vonderheide] had farm income, she should have presented the tax return to establish that fact. She did not." *Id.*

{¶ 22} The magistrate, deferring to the commission on questions of credibility and the weight to be given evidence, concluded the commission had not abused its discretion in denying Vonderheide's application for TTD compensation:

> Based upon a review of the stipulation of evidence and the arguments of counsel, the magistrate concludes that the commission did not abuse its discretion when it determined that [Vonderheide] had failed to meet the burden of proof, by a

preponderance of the evidence, that she worked immediately prior to the alleged period of disability and, as such, the commission did not abuse its discretion when it denied her application for TTD compensation. As such, this court should deny [Vonderheide]'s request for a writ of mandamus.

*Id.* at ¶ 60.

{¶ 23} Vonderheide timely filed an objection to the magistrate's decision. The commission timely filed a memorandum opposing Vonderheide's objection.

## II. OBJECTION TO MAGISTRATE'S DECISION

{¶ 24} Vonderheide presents a sole objection to the magistrate's decision:

The Magistrate erred in denying Relator's requested writ of mandamus since the disputed Commission order was not based on "some evidence."

{¶ 25} Vonderheide asserts she submitted sufficient evidence to the commission to "shift the burden of proof back to her employer and the BWC to rebut her assertion that she was engaged in the work force at the time the requested temporary total disability began." (Emphasis omitted.) (Obj.to Mag.'s Decision at 1.)

## III. LAW AND DISCUSSION

{¶ 26} To be entitled to relief in mandamus, Vonderheide must establish she has a clear legal right to relief, and the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967), paragraph nine of the syllabus. To do so, Vonderheide must demonstrate the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987). Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). To be successful in this mandamus action, Vonderheide must show the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as the factfinder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 27} We find the commission focused on information Vonderheide did not provide rather than the information she did provide and, in so doing, abused its discretion in denying her request for TTD compensation.

{¶ 28} The magistrate's decision includes a comprehensive discussion of the statutory and case law regarding the award of TTD compensation and its application generally. We agree with the commission and the magistrate that TTD compensation awarded pursuant to R.C. 4123.56 is intended to provide compensation for wages lost where an injured worker's injury prevents a return to the former position of employment. We agree further, conversely, if an injured worker is no longer a part of the active workforce, there can be no lost wages, or even the potential for lost wages. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245.

{¶ 29} That said, however, we find the traditional understanding of what constitutes being a part of the active workforce for the purpose of awarding TTD benefits has not taken into account inherent differences in farm employment from other types of employment as applied to the facts contained in the record.

{¶ 30} We note at the outset of our discussion the Bureau of Labor Statistics of the U.S. Department of Labor collects current employment statistics ("CES") only from nonfarm employers and does not include statistics on self-employed individuals.[1] The Bureau of Labor Statistics instead uses the Current Population Survey ("CPS") to measure employment in farming and vocation in self-employment.

> The CPS has a broad definition of employment and provides detailed demographic characteristics on individuals by their labor force status. The CPS includes groups of workers that are not included in CES estimates: the self-employed, agricultural workers, unpaid family workers, workers on unpaid leave, and employees of private households. * * *
>
> * * *

---

[1] For more information, *see* Bowler and Marisi, *Understanding Employment Measures from the CPS and CES Survey*, Monthly Labor Review, 24 (Feb. 2006), available at https://www.bls.gov/opub/mlr/2006/02/art2full.pdf (accessed Apr. 12, 2018) ("The CES survey is a Federal-State cooperative program in which the Bureau of Labor Statistics works with State employment security agencies to collect data each month on employment, hours, and earnings from a sample of nonfarm establishments, including government. The CES survey sample, which includes about 160,000 U.S. firms of all sizes, covers about 400,000 worksites. The survey counts nonfarm payroll jobs only—with no age restriction on the employed—and does not include the self-employed.").

> * * * In the CES survey, the employment estimate provides a count of all nonfarm jobs. This means that persons working at more than one job would appear on more than one payroll and thus would be counted for each job. In contrast, the [CPS] household survey provides an estimate of employed *persons*, and each worker is counted once regardless of how many jobs he or she holds. * * *
>
> * * * The CPS counts a person as employed if the person performed at least 1 hour of work during the reference week, whether as a wage and salary worker, as a self-employed individual in his or her own business or farm, or as an employee of a private household. *Unpaid family workers are counted if they worked at least 15 hours in a family-owned business.* Workers away on temporary unpaid absences also are included as employed, falling into a category known as "with a job, not at work." This category includes workers who have a job at which they did not work during the survey week because they were on vacation, were ill, needed to take care of family or personal obligations, were on maternity or paternity leave, were involved in a labor dispute such as a strike, or could not work due to bad weather.

(Emphasis sic and added.) (Bowler and Marisi, *Understanding Employment Measures from the CPS and CES Survey*, Monthly Labor Review, 24, 26 (Feb. 2006), available at https://www.bls.gov/opub/mlr/2006/02/art2full.pdf (accessed Apr. 12, 2018).)

{¶ 31} From this information, it is clear Vonderheide was employed when she worked on the family farm, even if she did not receive a paycheck. From this information, it is also clear the Bureau of Labor Statistics recognizes people running or working a farm do not work a typical 40-hour work week and hours worked on a family farm typically do not translate into compensation in the form of a regular paycheck or the typical payday experienced by the majority of persons engaged in the work force and whose *job* statistics are counted by the Bureau of Labor Statistics based on data supplied by employers in nonfarm employment sectors. For the commission not to recognize this is an abuse of discretion.

{¶ 32} The record of this matter evidences Vonderheide submitted unrefuted testimonial and documentary evidence demonstrating she was engaged in running and working her family's farm in July 2012. Her testimony and the affidavits from her son and herself recounted the farm chores she personally performed up until the time of her surgery

for her allowed claim in July 2012, work she was unable to perform after the surgery. At the hearing before the SHO, Vonderheide also testified about her participation in running and working the family farm before and after her husband's death, up until the time her industrial injury prevented her from work she had performed.

{¶ 33} With respect to the commission's reliance on the fact Vonderheide did not live at the farm, we are not aware of any legal provision that requires a person engaged in farming to reside at the farm in order for the person's labor to constitute "work" or employment so as to establish the person as being a part of the active workforce. In fact, the Bureau of Labor Statistics places self-employed persons in the same category as farm workers without distinction to their residence. *Id.* at 24. *See also id.* at 23, 26 ("[T]he CPS is a household survey, while the CES survey is a survey of businesses as well as government establishments. [T]he household survey provides an estimate of employed *persons*, and each worker is counted once regardless of how many jobs he or she holds."). (Emphasis sic.) In short, due to the nature of Vonderheide's claimed employment, she only needed to be counted by the household where she lived in order to be counted as employed working on the family farm.

{¶ 34} We hold the commission's decision was not based on some evidence and as such resulted in an abuse of discretion when it determined Vonderheide was not engaged in the active workforce immediately before the time for which she requests TTD compensation. The commission had a clear legal duty to consider Vonderheide's evidence of farm employment, not to disregard it. We disagree with the magistrate's conclusion that it was not an abuse of discretion for the commission to determine Vonderheide had failed to prove by a preponderance of the evidence that she worked immediately prior to the alleged period of disability, and, consequently, to deny Vonderheide's application for TTD compensation.

{¶ 35} Accordingly, we sustain Vonderheide's objection to the magistrate's decision.

## IV. CONCLUSION

{¶ 36} Upon review of the magistrate's decision, an independent review of the record, and due consideration to Vonderheide's objection, we find the magistrate has properly stated many of the pertinent facts. We adopt those facts with which we agree and make the additional findings of fact based on the record and applicable law.

{¶ 37} However, we disagree with the magistrate's conclusions of law and do not adopt them.  We thus sustain Vonderheide's objection to the magistrate's decision and find the commission abused its discretion in finding Vonderheide had not met her burden in showing she was eligible for TTD compensation as of July 31, 2012.

{¶ 38} Accordingly, we grant the requested writ of mandamus and order the commission to vacate the SHO order of December 10, 2014.

*Objection sustained;*
*writ of mandamus granted.*

TYACK, J., concurs.
SADLER, J., dissents.

SADLER, J., dissenting.

{¶ 39} I agree with the magistrate's conclusion that the commission did not abuse its discretion in determining relator had failed to meet her burden of proof, by a preponderance of the evidence, that she was entitled to an award of temporary total disability compensation, and I would adopt the magistrate's decision and deny the requested writ of mandamus.  Because the majority holds otherwise, I respectfully dissent.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Sharon Vonderheide, | : | |
| Relator, | : | |
| v. | : | No. 16AP-493 |
| Multi-Color Corporation and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on January 27, 2017

*Clements, Taylor, Butkovich, & Cohen LPA, Co.,* and *Edward Cohen,* for relator.

*Michael DeWine,* Attorney General, and *John Smart,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 40} Relator, Sharon Vonderheide, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for temporary total disability ("TTD") compensation and ordering the commission to find that she is entitled to that compensation.

Findings of Fact:

{¶ 41} 1. Relator sustained a work-related injury on June 28, 1992, and her workers' compensation claim has been allowed for the following conditions:

Lumbar sprain; medial collateral left knee ligament sprain; right knee loose body/enthesopathy; popliteal cyst both knees; contusion right knee; medial meniscus tear right knee; chondromalacia right knee; osteoarthritis lower leg, bilateral; right knee infection/hardware; right knee instability.

{¶ 42} 2. Relator received a period of TTD compensation which was terminated effective December 23, 2002 after the commission found that relator's then allowed conditions had reached maximum medical improvement ("MMI").

{¶ 43} 3. Relator was enrolled in a vocational rehabilitation plan in November 2003. Relator completed eight weeks of work conditioning followed by four weeks of work hardening. Thereafter, there was a one week non-medical interruption when relator was out of town followed by one or more missed appointments. Relator never began a job search due to ongoing symptoms of edema and numbness of her right foot, as well as personal family issues regarding healthcare for her adult son.

{¶ 44} 4. By letter dated November 26, 2003, relator's rehabilitation file was closed due to relator's request to withdraw.

{¶ 45} 5. It is undisputed that relator began receiving Social Security Retirement in 2002.

{¶ 46} 6. In 2012, relator underwent two knee surgeries.

{¶ 47} 7. In January 2013, relator's claim was additionally allowed for right knee infection/hardware.

{¶ 48} 8. Following her surgery, relator filed a motion seeking the payment of TTD compensation beginning July 31, 2012. Relator's motion was supported by medical evidence from various physicians. Relator also included computer generated summaries of her Ohio tax returns from 2004 through 2012 and Internal Revenue Service ("IRS") tax return transcripts for the years 2009 and 2010. Those IRS forms show income in the form of rent/royalty/partnership/estate. Although relator asserts she worked on her family farm, the tax documents she supplied do not show any farm income.

Relator also submitted an affidavit wherein she stated, in pertinent part, as follows:

[Two] Between 2002 and 2012, I have worked, sought work or participated in vocational rehabilitation; some of the places I sought work were at McDonald's & Pizza Hut.

[Three] On August 5, 2014 copies of my 2009 & 2010 Tax Return Transcripts were filed with the Industrial Commission as I am unable to locate all of my wages showing both rental income and farm income (bailing hay); however, I worked on and helped run the farm this entire time. Likewise;

[Four] My husband and I worked the farm together; however I did work additional jobs throughout our marriage. In October of 2001 I was permanently laid off by Standex Electronics and began working only on the farm when my medical condition began deteriorating in 2002.

[Five] Once my medical condition from this injury worsened in 2012, I was no longer able to continue with any work.

Relator also included the affidavit of her son, wherein he stated:

[Two] From 2003 through 2012, I personally worked with my mother on our family farm; this work was year around, weather permitting;

[Three] During this time, I personally witnessed my mother doing a variety of tasks involved with running and working the farm, including driving a tractor, running the business of the farm, organizing and ordering work crews, farming and stripping tobacco, etc.

[Four] To my knowledge, my mother continued in this occupation until the end of July 2012 when she had serious knee surgery; to my knowledge, she has not worked on the farm since that date.

{¶ 49} 9. Relator's motion for TTD compensation was heard before a district hearing officer ("DHO") on October 27, 2014. The DHO denied the request for TTD compensation finding that relator failed to satisfy her burden of proving by a preponderance of the evidence that she was entitled to that award; specifically, she failed to show that she was employed at the time of the beginning of the alleged period of disability. The DHO specifically noted that relator had been on Social Security Retirement since 2002 and failed to provide sufficient evidence that she worked or tried to be employed since November 2003.

{¶ 50} 10. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on December 4, 2014. The SHO affirmed the prior DHO order and denied relator's

request for TTD compensation finding that relator failed to meet her burden of proof establishing that she was in the workforce and that she had wages to replace beginning July 2012. The SHO explained:

> In making this finding, the Hearing Officer relies on several factors. First, the Injured Worker applied for and began receiving social security retirement benefits beginning in 2002. The Injured Worker submitted an affidavit and testified at hearing that she made some attempts to look for work following the date that she started receiving social security benefits. However, there is no evidence that she has worked or looked for work in the years leading up to July of 2012.
>
> The Injured Worker's attorney argued that the Injured Worker owned and ran a family farm and that this is evidence that she had not left the work force prior to the requested start date of temporary total disability compensation. The Hearing Officer finds that the evidence that has been submitted on the farm work is conflicting. The Injured Worker submitted an affidavit of her own and from her son, Mr. Michael Vonderheide, which indicated that she worked from 2003 to 2012 on her family farm. The Injured Worker also submitted tax information to show that she reported income for the period from 2003 through 2012.
>
> The Injured Worker testified at hearing that she and her husband had owned the farm for years since before 2003. The Injured Worker did not live at the farm, although her husband did. Instead, she lived an hour and a half away from the farm. She testified to performing work and different farm chores on the farm on weekends when she had a full time job. She further testified to having employees who worked on the farm. Since her husband's death, she has begun leasing the farm out for someone else to farm. At hearing, when questioned about the last time she worked, she testified to performing work activities on the farm two weeks ago.
>
> The tax records are also conflicting. The income reported from the family farm fluctuated from year to year. There does not appear to be any correlation with the amounts earned in the years that she worked on the farm compared to when she was unable to work on the farm. The Injured Worker testified that she did not receive wages on a regular basis for her work. Instead, she testified that her husband would give her money that remained at the end of the year after expenses were paid.

> The Hearing Officer finds that the Injured Worker has not established that her ownership of, and participation in, the family farm is evidence that she was in the work force and receiving wags. The Hearing Officer concludes that the farm was, and continues to be, a passive investment that the Injured Worker has which she sometimes performed chores on. The Hearing Officer finds that this is not evidence that the Injured Worker was in the work force and actively working prior to the date that she is requesting temporary total disability compensation begin. The Hearing Officer finds that there were no wages to replace as of 07/31/2012. Therefore, the Hearing Officer finds that the Injured Worker is not entitled to the payment of temporary total disability compensation. The Hearing Officer orders that the C-86 Motion is denied.

> This order is based upon the lack of evidence of employment, the BWC claim notes dated 03/21/2014, [*State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245; *State ex rel. Corman v. Allied Holdings, Inc.,* 132 Ohio St.3d 202, 2012-Ohio-2579; and *State ex rel. Hoffman v. Rexman Beverage Can Co.,* 137 Ohio St.3d 129 (2013)].

{¶ 51} 11. Relator's further appeal was refused by order of the commission mailed December 31, 2014.

{¶ 52} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 53} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 54} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 55} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order

which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 56} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 57} It is undisputed that TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where an injured worker's injury prevents a return to the former position of employment. There can be no lost wages, or even the potential for lost wages, if the injured worker is no longer a part of the active workforce. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245.

{¶ 58} In the present case, the commission found that relator failed to establish that she was receiving wages immediately prior to her claimed period of disability and was, therefore, ineligible to receive TTD compensation. At the hearing before the SHO, relator specifically testified that, after her husband died in 2009, she sold the cattle and leased the farm property to others. From that time on, relator did continue to maintain the property by cutting the grass and performing upkeep on the family home located on the property. This activity does not necessarily constitute work for purposes of TTD compensation. Grass needs to be cut and a house must be maintained, but these are every day tasks everyone performs. Relator did not testify that she still planted seeds, cut and hung the tobacco in the barn to dry, and remove the leaves from the stalks. None of relator's testimony nor the tax information she submitted, nor her affidavit, nor the affidavit of her son proves that,

after she leased out the property and sold the cattle, that she actually worked on the farm. Although relator indicated that she was working until the surgeries in 2012, as the SHO said, the evidence was conflicting. Further, relator did not present tax records beyond 2010 because her husband prepared their tax returns. Her husband died in 2009. Thereafter, relator's taxes were prepared by someone other than her husband. If she had farm income, she should have presented the tax return to establish that fact. She did not.

{¶ 59} Credibility and the weight to be given the evidence are clearly within the discretion of the commission as fact finder and it is immaterial whether there is other evidence, even if greater in quality and/or quantity supports a decision contrary to the commission's. *Teece*; *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996).

{¶ 60} Based upon a review of the stipulation of evidence and the arguments of counsel, the magistrate concludes that the commission did not abuse its discretion when it determined that relator had failed to meet the burden of proof, by a preponderance of the evidence, that she worked immediately prior to the alleged period of disability and, as such, the commission did not abuse its discretion when it denied her application for TTD compensation. As such, this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).