[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Vonderheide v. Multi-Color Corp.,* Slip Opinion No. 2019-Ohio-1270.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1270

THE STATE EX REL. VONDERHEIDE, APPELLEE, *v.* MULTI-COLOR CORPORATION ET AL.; INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Vonderheide v. Multi-Color Corp.,* Slip Opinion No. 2019-Ohio-1270.]**

*Workers' compensation—Temporary total disability—Industrial Commission's conclusion that claimant was not in active workforce when she underwent knee surgery was supported by evidence in record—Court of appeals' judgment granting writ of mandamus and ordering commission to vacate decision reversed.*

(No. 2018-0832—Submitted February 19, 2019—Decided April 9, 2019.)

APPEAL from the Court of Appeals for Franklin County, No. 16AP-493, 2018-Ohio-1714.

_____

**Per Curiam.**

{¶ 1} Appellant, Industrial Commission, denied the request of appellee, Sharon Vonderheide, for temporary-total-disability ("TTD") compensation. The Tenth District Court of Appeals granted Vonderheide's petition for a writ of mandamus and ordered the commission to vacate its decision. The commission asks this court to reverse that judgment. Vonderheide requests oral argument. We reverse the Tenth District's judgment and deny the motion for oral argument.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Vonderheide sustained injuries while working at Multi-Color Corporation in 1992. Her workers' compensation claim was approved for a variety of back, leg, and knee conditions. In 2001, she had a right total knee replacement. In 2002, Vonderheide began receiving Social Security retirement benefits. That same year, the commission determined that Vonderheide had reached maximum medical improvement. In 2003, she entered a vocational rehabilitation program but withdrew from it after several months.

{¶ 3} In testimony before the commission, Vonderheide stated that after 2002, she worked primarily at her family farm in Brown County, approximately 90 minutes from her residence in Cincinnati. The farm raised cows and grew tobacco; working with her husband (who lived at the farm) and others, Vonderheide rode on the back of a tractor and planted tobacco seeds, stripped tobacco leaves from their stalks, separated the leaves into three different grades, drove a tractor to cut hay, and raked hay. At the end of each year, her husband gave her a portion of the farm's net profits as payment for these activities.

{¶ 4} After Vonderheide's husband died in 2009, however, she sold all the cattle and leased the farmland to others. Though her son stated in an affidavit that Vonderheide had continued with activities including farming and stripping tobacco until July 2012, Vonderheide testified that after she sold the cows and leased out the farmland, her activity at the farm involved tasks such as mowing the grass and

picking up trash in the yard. The record contains transcripts of Vonderheide's tax returns for tax years 2004 through 2007 and 2009 through 2012, showing that her income varied significantly from year to year.

{¶ 5} In July 2012, Vonderheide had surgery on her right knee. She had a follow-up surgery in November 2012. In March 2014, Vonderheide requested TTD compensation commencing July 31, 2012. The commission denied the request, finding that Vonderheide had not met her burden to establish that she was in the workforce and had wages to replace as of that date. The commission noted that the evidence regarding Vonderheide's farm work was conflicting, but it ultimately concluded that the farm was a passive investment at which Vonderheide sometimes performed chores and that this did not constitute evidence that Vonderheide was in the workforce as of the date on which she was requesting that her TTD compensation begin.

{¶ 6} Vonderheide filed a mandamus petition asking the Tenth District to order the commission to vacate its decision and grant her request for TTD compensation. A Tenth District magistrate recommended that the court deny the writ, and Vonderheide objected. The court of appeals sustained the objection and granted the writ, holding that the commission's decision was not based on "some evidence" and therefore constituted an abuse of discretion. 2018-Ohio-1714, 111 N.E.3d 773, ¶ 34-35. The commission appeals the Tenth District's decision.

## II. ANALYSIS

{¶ 7} When reviewing a claim for a writ of mandamus in a workers' compensation case, a court's role is to determine whether the commission has abused its discretion. *See State ex rel. Packaging Corp. of Am. v. Indus. Comm.*, 139 Ohio St.3d 591, 2014-Ohio-2871, 13 N.E.3d 1163, ¶ 29. The commission is the exclusive finder of fact and has sole responsibility to evaluate the weight and credibility of the evidence. *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, 66 N.E.3d 699, ¶ 20. So long as the commission's order is

based on some evidence in the record, a court should not find an abuse of discretion. *Id*.; *Packaging Corp.* at ¶ 29.

### A. Some Evidence Supported the Commission's Decision

**{¶ 8}** "Temporary total disability compensation is intended to compensate an injured worker for the loss of earnings incurred while the industrial injury heals." *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, ¶ 9. "There can be no lost earnings, however, or even a potential for lost earnings, if the claimant is no longer part of the active work force." *Id.*

**{¶ 9}** The Tenth District began its analysis by asserting that "the traditional understanding of what constitutes being a part of the active workforce for the purpose of awarding TTD benefits has not taken into account inherent differences in farm employment from other types of employment as applied to the facts contained in the record." 2018-Ohio-1714, 111 N.E.3d 773, at ¶ 29. To remedy this, the Tenth District turned to an article describing how the United States Department of Labor's Bureau of Labor Statistics counts farm workers in its Current Population Survey ("CPS"). *Id*. at ¶ 30, citing Bowler and Morisi, *Understanding the Employment Measures from the CPS and CES Survey*, Monthly Lab.Rev. 23, 24, 26 (Feb. 2006), available at https://www.bls.gov/opub/mlr/2006/02/art2full.pdf (accessed Mar. 5, 2019). The Tenth District concluded that the CPS survey would have counted Vonderheide as employed and that the commission abused its discretion by failing to recognize this. *Id*. at ¶ 31.

**{¶ 10}** The Tenth District erred when it created a new standard to determine whether farm workers are in the active workforce based on whether the CPS survey would count them as employed. No authority supports the use of guidelines for a federal population survey to determine eligibility for Ohio workers' compensation benefits. More importantly, applying the CPS survey's standard would count claimants as employed for purposes of TTD-compensation eligibility in violation of principles espoused in Ohio's workers' compensation caselaw.

**{¶ 11}** The CPS survey has a "broad definition of employment." *Bowler and Morisi* at 24. That definition includes workers performing as little as one hour of work during the week that serves as the survey's reference period, without regard to the regularity of their work in any other week. *Id*. at 24, 26. It also includes unpaid "family workers" working in family-owned businesses. *Id*.

**{¶ 12}** Workers who sustain an industrial injury, leave their former position of employment, reenter the workforce, and become temporarily and totally disabled due to the original injury while working at their new job *can* qualify for TTD compensation under Ohio law. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, syllabus. This rule applies equally to those who reenter the workforce as family-business workers, including farmers. But to be eligible for TTD compensation, those workers, like any others, must be *actively* engaged in *gainful* employment. *See Pierron*, 120 Ohio St.3d 40, 2008-Ohio-5245, 896 N.E.2d 140, at ¶ 9-11; *McCoy* at ¶ 40. That is to say, their work—though it may be full- or part-time—must be regular, not sporadic. *See, e.g.*, *State ex rel. Brown v. Indus. Comm.*, 10th Dist. Franklin No. 14AP-722, 2015-Ohio-2923, ¶ 17-18, citing *Pierron* at ¶ 4, 10-11; *State ex rel. Dishman v. Indus. Comm.*, 10th Dist. Franklin No. 07AP-613, 2008-Ohio-3291, ¶ 40. And they must, *on account of that work*, receive earnings that will be lost due to their industrial injury. *See Pierron* at ¶ 9; *McCoy* at ¶ 40.

**{¶ 13}** Applying *Pierron*, the commission concluded that at the time she underwent knee surgery in July 2002, Vonderheide's farm was a passive investment, she was not in the active workforce, and she therefore had no wages to replace. The commission's decision was supported by evidence in the record. First, Vonderheide had chosen to begin receiving Social Security retirement benefits in 2002, at age 62. This court has considered the choice to seek retirement benefits as evidence that a claimant was no longer in the workforce. *State ex rel. Floyd v. Formica Corp.*, 140 Ohio St.3d 260, 2014-Ohio-3614, 17 N.E.3d 547, ¶ 24 ("Had

Floyd intended to return to the workforce after leaving Formica, he had no reason to file for retirement benefits at that time"). Second, while Vonderheide testified that she made a few attempts to find a job after 2002, her testimony did not include any such efforts leading up to 2012—leaving only her farm as a possible source of work. Third, after her husband's death in 2009, Vonderheide had sold the farm's cattle and leased its land out to be farmed by others. Fourth, the tax records that Vonderheide submitted do not specify whether her earnings came from farm work or rents. And finally, the tax records show that Vonderheide's earnings fluctuated greatly from year to year both before and after her husband's death and that she earned more in some of the years that she physically did little work at the farm than she did in some of the years in which she performed more work at the farm.

{¶ 14} As the commission acknowledged, the record also contained evidence that supported Vonderheide's claim. However, "[a]n order that is supported by 'some evidence' will be upheld. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's." *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376, 658 N.E.2d 1055 (1996). The Tenth District erred by disregarding this directive.

### B. *Vonderheide Has Not Shown a Need for Oral Argument*

{¶ 15} Finally, we deny Vonderheide's motion for oral argument. In a direct appeal such as this, the granting of oral argument is subject to this court's discretion. S.Ct.Prac.R. 17.02(A). We typically do not grant oral argument unless the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals. *See State ex rel. BF Goodrich Co., Specialty Chems. Div. v. Indus. Comm.*, 148 Ohio St.3d 212, 2016-Ohio-7988, 69 N.E.3d 728, ¶ 23. Vonderheide presents no argument in support of her request for oral argument; accordingly, she identifies

nothing that makes this case more complex or important than the many other workers' compensation appeals that this court has resolved without oral argument.

### III. CONCLUSION

{¶ 16} For the reasons set forth above, we reverse the judgment of the court of appeals and deny the motion for oral argument.

Judgment reversed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., dissents.

_____

Clements, Taylor, Butkovich & Cohen, L.P.A., Co., and Edward Cohen, for appellee.

Dave Yost, Attorney General, and John Smart, Assistant Attorney General, for appellant.

_____