[Cite as *State ex rel. Lopez v. Interstate Rd. Mgt. Corp.*, 2021-Ohio-2082.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. George G. Lopez, | : | |
| Relator, | : | |
| v. | : | No. 20AP-108 |
| Interstate Road Management Corp. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on June 22, 2021

*Gallon, Takacs, & Boissoneault, Co. L.P.A,* and *Theodore A. Bowman*, for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

NELSON, J.

{¶ 1} George G. Lopez as relator filed this original action asking us to issue a writ of mandamus directing the Industrial Commission of Ohio (1) to vacate its order denying Mr. Lopez permanent total disability compensation, and (2) to award him that compensation or conduct further proceedings toward that end.

{¶ 2} Pursuant to Civil Rule 53 and Local Rule 13(M) of the Tenth District Court of Appeals, we referred the matter to a magistrate of this court. On February 22, 2021, the magistrate signed the appended decision. The magistrate's decision includes findings of fact and conclusions of law, and it recommends that we deny the requested writ.

{¶ 3} Mr. Lopez has not filed any objections to the magistrate's decision. Civil Rule 53(D)(4)(c) provides: "If no timely objections are filed, the court may adopt a magistrate's

decision, unless [the court] determines that there is an error of law or other defect evident on the face of the magistrate's decision."

{¶ 4} We find no error of law or other defect evident on the face of the magistrate's decision. Even if we were inclined to believe from the magistrate's account that we might have made a different evaluation had we been sitting in the place of the Industrial Commission, that is not our role and that is not the standard of review we apply. The magistrate correctly pointed to *State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 2019-Ohio-1270, ¶ 14, where the Supreme Court of Ohio recited, quoting from *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996), that a commission order " 'that is supported by "some evidence" will be upheld. It is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's.' " *See* App'x at ¶ 21.

{¶ 5} Because no error is evident on the face of the magistrate's decision, and in the absence of objections for us to evaluate, we adopt that decision as our own, including the findings of fact and conclusions of law. Accordingly, we deny the request for a writ of mandamus.

*Writ of mandamus denied.*

BEATTY BLUNT and MENTEL, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____

# A P P E N D I X

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. George G. Lopez, | : | |
| Relator, | : | |
| v. | : | No. 20AP-108 |
| Interstate Road Management Corp. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 22, 2021

---

*Gallon, Takacs, & Boissoneault, Co. L.P.A,* and *Theodore A. Bowman*, for relator.

*Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 6} Relator, George G. Lopez ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied claimant's request for permanent total disability ("PTD") compensation, and to enter an order awarding the compensation.

Findings of Fact:

{¶ 7} 1. On September 9, 2003, claimant sustained his first industrial injury in the course of and arising out of his employment while working as a driver for respondent, Interstate Road Management ("employer"). A hose stuck on the tailgate of his truck,

causing him to fall. The claim was allowed for the following conditions: closed left fracture distal radius; impingement left shoulder; aggravation of pre-existing degenerative joint disease acromioclavicular joint left shoulder; cervical radiculopathy left bicipital tenosynovitis; and left rotator cuff tear.

{¶ 8}    2. On August 11, 2008, claimant sustained his second industrial injury in the course of and arising out of his employment as a driver for the employer. A rear tire on the truck he was operating blew out, causing the truck to tip over. His workers' compensation claim was allowed for the following conditions: closed left fracture distal radius; sprain of neck; sprain lumbar region; contusion of chest wall; left open wound of left forehead; contusion left elbow; contusion right elbow; herniated disc L4-5; facet arthropathy L4-5; spinal stenosis L2-3 and L3-4; cervical radiculopathy C5-6; and substantial aggravation of pre-existing osteophyte complex C5-6.

{¶ 9}    3. Claimant filed an application for temporary total disability compensation, which was granted and paid from August 12, 2008, until June 6, 2017.

{¶ 10}  4. On May 24, 2017, claimant was medically examined by Lora L. Thaxton, M.D., on behalf of the Ohio Bureau of Workers' Compensation. In her May 24, 2017, report, Dr. Thaxton found the following: (1) claimant has reached maximum medical improvement ("MMI") at which no fundamental functional or physiological change can be expected in spite of continuing or rehabilitative procedures; (2) although claimant has had multiple procedures and multiple forms of treatment that have decreased his pain somewhat, they have failed to eliminate his pain to enable him to be functional in his job description; therefore, he is at MMI; (3) claimant is not able to sit or stand for long periods and is definitely incapable of lifting 50-100 pounds; therefore, he is not able to return to his former position of employment; (4) claimant is permanently restricted from the occasional ability to lift and carry up to 10 pounds, to bend, twist, and turn occasionally, push/pull, stand/walk, and sit; claimant is unable to squat and kneel or lift above the shoulders, reach below the knee; and claimant is unable to lift and carry anything over 10 pounds; and (5) vocational rehabilitation is not appropriate for claimant, as he is 65 years old, has chronic pain medications and chronic pain complaints, and he is unable to sit or stand for any extended period of time, which would make vocational rehabilitation a very difficult task to undertake.

{¶ 11} 5. In a June 6, 2017, letter by Thomas G. Andreshak, M.D., Dr. Andreshak found claimant had reached MMI.

{¶ 12} 6. In an August 30, 2017, report, Dr. Andreshak found the following: (1) claimant is permanently and totally disabled; and (2) due to his allowed conditions, he is unable to engage in sustained remunerative employment.

{¶ 13} 7. On October 10, 2017, claimant filed an application requesting PTD compensation from June 7, 2011, through the present.

{¶ 14} 8. Claimant was examined, at the request of the commission, by Donato Borrillo, M.D., on November 27, 2017, and in his December 4, 2017, report, Dr. Borrillo found the following: (1) claimant is still at MMI relative to the allowed conditions; (2) there is no indication that further treatment of any type will result in a change or improvement in his baseline functional or physiological status as it pertains to these conditions; (3) claimant has a total 35 percent whole person impairment for the allowed conditions; (4) claimant has significant impairment of the left upper extremity with restricted range of motion; (5) the conditions of the cervical spine and lumbar spine prevent him from effectively bending and significant lifting; (6) claimant has difficulty with some activities of daily living and only drives short distances; (7) claimant is capable of exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently; (8) claimant is able to sit constantly with walking or standing occasionally; and (9) claimant is capable of sedentary work with the additional limitation of no work above shoulder height.

{¶ 15} 9. In a January 20, 2018, vocational report by Anne Savage Veh, M.A., LPCC-S, Savage Veh found the following: (1) claimant completed fourth grade but dropped out to begin working as a laborer on a farm; (2) claimant has not completed a diploma or GED; (3) claimant had a commercial driver's license, which has expired; (4) he has not returned to work since August 11, 2008; (5) the Wide Range Achievement Test assessing claimant's vocational potential revealed a 1 percentile ranking on the word-reading sub-test, and a 0.2 percentile ranging on the spelling sub-test; (6) based upon claimant's physical and exertional limitations, as well as his chronic pain and non-transferable skills, claimant is precluded from returning to any of his former occupations; (7) claimant's academic skills of spelling and reading are significantly impaired at or below the first-grade level; (8) although Dr. Borrillo opined that claimant is capable of sedentary work, he cannot stand,

sit, or walk in a functional capacity relative to a job task and is unable to reach, carry, lift, or push or pull at any substantial level for daily activities or any overhead reaching; and (9) due to his age (66 years old – vocationally advanced), physical and exertional limitations, chronic pain, lack of transferable skills, and significantly below-average reading and spelling skills, claimant does not retain the capacity to engage in sustained, remunerative employment.

{¶ 16} 10. On March 6, 2018, a staff hearing officer ("SHO") issued an order denying claimant's PTD application, and made the following findings: (1) Dr. Borrillo's December 4, 2017, report was persuasive, and, when only the impairment arising from the allowed conditions is considered, claimant is capable of returning to sustained remunerative employment; (2) claimant's age of 66 is a negative factor in terms of potential for re-employment; (3) claimant's education is a negative factor in terms of potential for re-employment; however, on his IC-2 application, claimant stated he is capable of reading, writing, and performing basic math, although not well, and claimant is bilingual in English and Spanish; (4) claimant's work history as a truck driver with a commercial driver's license and farm laborer from 1969 to 1992, are positive factors in terms of potential for re-employment; (5) claimant's work history of supervising 50 people as a farm laborer provides experiences transferable to other less strenuous work, and supports that he could be retrained to perform work in a sedentary work capacity; (6) claimant has not availed himself of any vocational rehabilitation program since he last worked in 2008, and the commission may consider his failure to undergo rehabilitation and retraining that would permit his return to work; and (7) because claimant has a residual functional capacity to perform sedentary work activity as described by Dr. Borrillo when only the impairment arising from the allowed conditions is considered, because claimant has had the capacity over the years since his departure from the workforce to acquire new skills, and because he retains the capacity to work when his age, education, and intellect are considered, claimant is capable of sustained remunerative employment.

{¶ 17} 11. On March 9, 2018, claimant filed a request for reconsideration. On April 12, 2018, the commission denied the request for reconsideration.

{¶ 18} 12. On February 19, 2020, claimant filed a complaint for writ of mandamus, requesting that this court vacate its order that denied his application for PTD compensation, and to enter an order awarding the compensation.

Conclusions of Law and Discussion:

{¶ 19} The magistrate recommends that this court deny relator's complaint for writ of mandamus.

{¶ 20} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 21} " 'Permanent total disability' means the inability to perform sustained remunerative employment due to the allowed condition(s) in the claim(s)." Ohio Adm.Code 4121-3-34(B)(1). A court must uphold a factual determination by the commission so long as it is supported by some evidence in the record, regardless of whether evidence supporting a contrary conclusion also exists, even if the contrary evidence is greater in quality or quantity. *State ex rel. Vonderheide v. Multi-Color Corp.*, 156 Ohio St.3d 403, 2019-Ohio-1270, ¶ 14. Evaluation of the weight and credibility of the evidence is the exclusive province of the commission, which "has substantial leeway in both interpreting and drawing inferences from the evidence before it." *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, ¶ 34.

{¶ 22} Claimant first argues that the SHO's March 6, 2018, order was deficient in that it failed to make any mention of the evidence before the commission that he reads at or below first-grade level. He contends that the commission is required to address a claimant's illiteracy and its impact on his potential for vocational rehabilitation.

{¶ 23} In making the determination regarding a claimant's ability to do any sustained remunerative employment, the commission must consider not only medical impairments but also the claimant's age, education, work record, and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly

explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 24} Here, with regard to the impact of claimant's literacy limitations on his vocational rehabilitation, the cases cited by claimant are inapposite to the present circumstances. Although in *State ex rel. Hall v. Indus. Comm.*, 80 Ohio St.3d 289 (1997), the Supreme Court of Ohio found that illiteracy is a factor that the commission must consider when it analyzes the nonmedical factors in a PTD determination, *id.* at 292, the claimant in *Hall* was "illiterate," his work history consisted "entirely" of extremely heavy physical labor that was well beyond his current physical capacities, and there was no explanation as to how or for what jobs claimant was able to retrain. However, in the present case, the SHO found that claimant stated on his IC-2 application that he is capable of reading, writing, and performing basic math, and he is bilingual in English and Spanish. Importantly, the SHO cited claimant's work history as a truck driver with a commercial driver's license as a positive factor in terms of his potential for re-employment. The SHO also found that claimant's work history of supervising 50 people on a farm provides experience transferable to other less strenuous work and supports that he could be retrained to perform work in a sedentary work capacity. Thus, claimant here is not illiterate, his work history contained employment beyond extremely heavy physical labor, and the SHO explained his supervisory history demonstrated he has skills and experience allowing him to be retrained for sedentary work, which distinguishes him from the claimant in *Hall*.

{¶ 25} The present case is also distinguishable from *State ex rel. Vansickle v. Indus. Comm.*, 10th Dist. No. 10AP-852, 2011-Ohio-4982, upon which claimant relies. In *Vansickle*, relator self-reported he could not read or write, was in special-education classes, and flunked ninth grade several times before quitting school. This court found that the SHO's order was deficient, in that it simply stated that relator had a ninth-grade education and found relator's education to be somewhat of a barrier with regard to future employment. This court noted that the SHO's order not only failed to address the illiteracy question, it did not even acknowledge relator's illiteracy claim. To the contrary, in the present case, the SHO did not ignore the literacy issue. The SHO found that claimant's education is a negative factor, but claimant self-reported he is capable of reading and writing and is bilingual in English and Spanish. Therefore, *Vansickle* is not analogous.

Thus, the commission's analysis of the vocational evidence in the record with regard to claimant's literacy was not deficient, and the commission cited some evidence to support that his literacy level did not foreclose the viability of vocational rehabilitation.

{¶ 26} Claimant next argues that the SHO's March 6, 2018, order was in error when it considered the fact that he has not availed himself of any vocational rehabilitation and retraining programs since he last worked in 2008. Claimant contends that participation in vocational rehabilitation is not required when evidence in the record establishes that the claimant is not a viable candidate for vocational rehabilitation. Claimant points out that his treating orthopedic surgeon, Dr. Andreshak, completed numerous MEDCO-14 forms in which he stated that claimant was not a candidate for vocational rehabilitation, and he stated in his August 30, 2017, report that claimant was medically unable to engage in sustained remunerative employment. Claimant also points to the May 24, 2017, report of Dr. Thaxton, in which she opined that, from a medical perspective, vocational rehabilitation would not be appropriate. Claimant asserts that the testing from vocational expert, Savage Veh, also demonstrated that he read at or below the first-grade level. Therefore, claimant contends, the present record contains both medical and vocational evidence that he is not a viable candidate for vocational rehabilitation.

{¶ 27} The Supreme Court of Ohio discussed vocational rehabilitation efforts in *State ex rel. Wilson v. Indus. Comm.*, 80 Ohio St.3d 250, 253-54 (1997), explaining:

> We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse a claimant's nonparticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized.

{¶ 28} Furthermore, the commission is not required to accept vocational evidence, and it has the discretion to accept or reject vocational evidence. *State ex rel. Lacroix v. Indus. Comm.*, 144 Ohio St.3d 17, 2015-Ohio-2313. The commission has authority to reject a vocational report, even if it is uncontradicted. *State ex rel. Singleton v. Indus. Comm.*, 71

Ohio St.3d 117 (1994). The commission is also not required to explain why certain evidence was deemed unpersuasive. *State ex rel. Giant Eagle, Inc. v. Indus. Comm.*, 10th Dist. No. 18AP-216, 2019-Ohio-2135, ¶ 22. The commission needs only to enumerate the evidence it relied upon to reach its decision and does not need to list or cite all evidence that has been considered and rejected. *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983); *State ex rel. Fultz v. Indus. Comm.*, 69 Ohio St.3d 327 (1994).

{¶ 29} Here, claimant's literacy level and its impact upon vocational rehabilitation has already been addressed above. With regard to the medical evidence and its impact on his viability for vocational rehabilitation, the commission specifically considered and reviewed all evidence, including the reports of Drs. Andreshak and Thaxton, but found the December 4, 2017, report of Dr. Borrillo more convincing. Dr. Borrillo found claimant is capable of exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently; claimant is able to sit constantly with walking or standing occasionally; and claimant is capable of sedentary work with the additional limitation of no work above shoulder height. That the commission found Dr. Borrillo's medical report more convincing than those of Drs. Andreshak and Thaxton was not an abuse of discretion and does not provide a basis for mandamus relief. Dr. Borrillo's report constituted some evidence to support that claimant was medically viable to participate in vocational rehabilitation, and the SHO did not error when she considered the fact that claimant has not availed himself of any vocational rehabilitation and retraining programs since he last worked.

{¶ 30} Accordingly, it is the magistrate's decision that this court should deny claimant's complaint for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).