[Cite as *State ex rel. Giant Eagle, Inc. v. Indus. Comm.*, 2019-Ohio-2135.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Giant Eagle, Inc., | : | |
| Relator, | : | |
| v. | : | No.  18AP-216 |
| Ohio Industrial Commission et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on May 30, 2019

*Matty, Henrikson & Greve, Kirk R. Henrikson*, and *Jesse P. Kanner*, for relator.

*Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

*Heller, Maas, Moro, & Magill, Co. LPA*, and *Patrick J. Moro*, for respondent Richard Gewak.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

NELSON, J.

{¶ 1}   This matter comes before us on the timely objections of respondent Richard Gewak to the magistrate's January 29, 2019 decision recommending that we issue a writ of mandamus ordering the Industrial Commission of Ohio to reconsider its conclusion that Mr. Gewak is entitled to permanent total disability compensation.

{¶ 2}   Pursuant to Civil Rule 53(D)(4)(d), we "undertake an independent review as to the objected matters to ascertain [whether] the magistrate has properly determined the factual issues and appropriately applied the law."  Because our independent review leads us to determine that mandamus is not warranted, we reject the magistrate's decision and

enter judgment denying the requested writ. We will return to the magistrate's ruling and the briefing on objections in due course, but for clarity of analysis we proceed first by describing matters afresh from our perspective as informed by the administrative record.

* * * * * *

{¶ 3} The Industrial Commission argues that "[t]he commission itself is the vocational expert" with regard to claims of permanent total disability benefits, and that courts are not to "reevaluate and reweigh the evidence before the commission." It argues that a commission determination is to be upheld where there is " 'some evidence' to support its decision." It argues that " 'it is not critical or even necessary for the commission to accept or rely upon a vocational report,' " saying "the commission is not required to explain why it rejects any report." And it argues that the fact that a hearing officer "did not discuss every report in the administrative record does not support a conclusion that the reports submitted * * * were not reviewed and considered."

{¶ 4} The commission argues all that. Regularly. Just not in this case. *Compare* Brief of Respondent Industrial Commission of Ohio in *State ex rel., Denton v. Indus. Comm.,* 10th Dist. No. 18AP-100 (Respondent's Aug. 22, 2018 Brief at 1, 8, 12, 13, 14) (making those arguments in case argued the day after this one was submitted), with Concession Brief of Respondent Industrial Commission of Ohio filed in this case a month earlier on July 24, 2018 (not so much).

{¶ 5} In *this* case, a staff hearing officer awarded permanent total disability benefits to a 65-year-old meat cutter named Richard Gewak, who after graduating from high school had worked for Giant Eagle and its predecessor for roughly 45 years. Stipulated Ex. BB, Sept. 19, 2017 SHO ruling; Stipulated Ex. T, Jan. 27, 2017 VocWorks Report at 4.

{¶ 6} The record reflects that Mr. Gewak worked on his feet, cutting meat and stacking heavy loads. *See, e.g.,* Stipulated Ex. FF, Sept. 19, 2017 Tr. at 11. Mr. Gewak began his work for a Giant Eagle forerunner in May of 1969. *Id.* at 7. He injured his back in 2001 while hoisting 40 pounds of turkey; was allowed a workers compensation claim for certain related conditions; returned to work, with some months on total temporary disability in 2007 and in 2012; performed his last day of work in June 2013 and eventually required surgery in 2014; was found to have obtained maximum medical

improvement as of May 2016; and filed his application for permanent total disability in 2017, which the hearing officer granted as effective as of June 2016. *See* Stipulated Ex. A; Stipulated Ex. FF, Sept. 19, 2017 Tr. at 4-18; Stipulated Ex. BB, Sept. 19, 2017 SHO ruling at 1-2.

{¶ 7} Giant Eagle then requested that the Industrial Commission reconsider the staff hearing officer's order. *See* Stipulated Ex. CC, Request for Reconsideration. Asserting that reconsideration was proper because "the Order of the Staff Hearing Officer represents a clear mistake of fact and law," *id.,* Memo. in Support of Recons. at 4, Giant Eagle emphasized its view that the hearing officer erred by relying on a vocational report from vocational specialist Shannon Valentine of Valentine VocRehab LLC that "does not even discuss any type of vocational retraining that could be done," *id.* at 1; Stipulated Ex. AA (Valentine report). Giant Eagle highlighted in bold, there as here, findings that it thought should have been given weight from Amy Rumrill of VocWorks, who reported in January of 2017 that Mr. Gewak said he "does not want to work and that Giant Eagle does not have jobs he can do." Memo in Support of Recons. at 2 (bolding omitted); *see also id.* at 3, 4 (regarding VocWorks report from January and a paper review of August 2017).

{¶ 8} Mr. Gewak responded that "a review of the transcript from [the staff hearing officer's hearing] reveals that Mr. Gewak's comments to Ms. Rumrill were clarified" by explaining that "he did not want to get out of work." Stipulated Ex. DD, Memo. in Opp. to Recons. at 2. "He goes on to explain that, '* * * here up in my mind, it's like—you know, it's telling me I want to work, but then my back's telling me I can't go back * * * [I] just couldn't do it no more. I mean, standing, cutting, and I * * * I fell. I still wanted to work 'til [age] 67, and—but, you know, up here, I just—you know, I want to work, but then my pain, I says, I just can't do it no more.' " *Id.* at 2.

{¶ 9} With the Rumrill report issue thus clearly presented, the commission denied Giant Eagle's "timely" request for reconsideration. *See* Compl. in Mandamus at ¶ 23, 24. The request, the commission found, "fails to meet the criteria of Industrial Commission Resolution R08-1-01 dated 11/01/2008." Stipulated Ex. EE (noting that the denial "was approved and confirmed by the majority of the members"). That publicly posted commission resolution establishing "Reconsideration Guidelines" acknowledges and later returns to the point that "continuing jurisdiction of the Industrial Commission is

not unlimited and that its prerequisites are: (1) new and changed circumstances; (2) fraud; (3) clear mistake of fact; (4) clear mistake of law; or (5) error by inferior tribunal [rendering the order defective]." Ohio Industrial Commission Reconsideration Guidelines, R08-1-01 (Nov. 1, 2008), at 1, 2. The commission's denial of reconsideration left the staff hearing officer's determination intact.

{¶ 10} The commission thus having disclaimed further continuing jurisdiction, Giant Eagle asks us to issue a writ of mandamus directing the commission to reverse its order that grants Mr. Gewak permanent total disability status. Compl. at 4. As it must in order to prevail here, Giant Eagle says that it has a clear legal right to such relief, and that the commission has a clear legal duty to provide it, because the staff hearing officer's order "is not supported by any evidence in the administrative record." Relator's Brief at 9-10 (citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986), which recites at page 79 that a right to mandamus "may be established only if the record is devoid of some evidence to support the commission's order").

{¶ 11} The centerpiece of Giant Eagle's argument, in essence, has been that the hearing officer's decision, while explicitly referring to the "functional capacity evaluation performed by Amy Rumrill," improperly "ignores the fact" that the assessment reflects, in Giant Eagle's words, that "Gewak's own lack of desire and/or motivation to work is what is preventing him from active participation in vocational services." Relator's Brief at 13, 15 (also arguing at 18 that while the hearing officer "does cite" the findings of examining Dr. Bartos, too, the decision did not accord those findings appropriate significance).

{¶ 12} The commission had those findings and arguments before it when it denied Giant Eagle's request for reconsideration. *See, e.g.*, Stipulated Ex. CC, Recons. Request and Memo.; Stipulated Ex. DD, Memo. In Opp. But here's the twist. In its briefing to this court, the commission seeks to reclaim the jurisdiction over this matter that it earlier had disclaimed.

{¶ 13} The commission's "Concession Brief" says that the body "did not consider the necessary non-medical factors when it adjudicated Gewak's PTD application," and then elucidates the point: Because "the SHO did not explicitly address the lack of participating in rehabilitation or cite to the alleged testimony of Gewak that clarified why he appeared disinterested [sic] in participating in rehabilitation," the commission

"concedes" that the hearing officer's decision erred as a matter of law in not "addressing whether Gewak had the capacity to reasonably develop other" remunerative skills. Concession Brief of Respondent at 1, 4-5. But the commission sells itself short, as we will elaborate below.

{¶ 14} Because we decline on this record to allow the commission to use this litigation stance to reclaim continuing jurisdiction that it already abjured in denying Giant Eagle's request for reconsideration, and because we find that the commission's determination that Mr. Gewak is "precluded from engaging in all sustained remunerative employment, and thus permanently and totally disabled" in fact is supported by "some evidence," *see Elliott*, 26 Ohio St.3d at 79 (citations omitted), we will conclude that the commission did not abuse its discretion in this matter and we consequently will deny the writ of mandamus requested by Giant Eagle.

{¶ 15} The hearing officer was not presented only with Ms. Rumrill's characterizations of what she saw as Mr. Gewak's disinclination to pursue vocational rehabilitation. To be sure, that assessment did feature significantly at the hearing, *see, e.g.,* Tr. at 21 (Hearing Officer: "I got that right here"), having been raised by Mr. Gewak's lawyer and discussed by Mr. Gewak himself, *id.* at 22-23, and of course having been emphasized by Giant Eagle, *id.* at 33, 37-41; *see also id.* at 39 (hearing officer notes related case citations provided by Giant Eagle). But the hearing officer also was presented other materials, including the "Employability Assessment" of Valentine VocRehab LLC. *See* Stipulated Ex. AA; Tr. at 24-25. Indeed, the hearing officer concluded the hearing by mentioning the Valentine report, even while saying that he would take the Rumrill assessment "for what it's worth." *Id.* at 45.

{¶ 16} The report from Vocational Specialist Shannon Valentine observed Mr. Gewak's "considerable difficulty with both sitting and standing for any appreciable amount of time"; it acknowledged test scores reflecting "considerable difficulty when attempting to perceive tabular material," and the like, suggesting (contrary to the VocWorks file review of August 29, 2017 at 8-9) that Mr. Gewak "would not be a viable candidate for entry level, sedentary clerking related work"; and it noted "decreased stamina and endurance for even sedentary activities," accompanied by "decreased focus and concentration as noted on the Minnesota Clerical Test." Stipulated Ex. AA at 2, 3, 4-

5.  In sum, it determined that "Vocational Rehabilitation is contraindicated," concluding that "it is the opinion of this Vocational Specialist that Mr. Gewak would not be capable of engaging in any sustained, remunerative employment."  *Id.* at 5 (emphasis in original).

{¶ 17} The hearing officer "based" his order on several assessments that he enumerated, including the narrative report from the state's examining physician Dr. Bartos (who, the hearing officer explicitly observed, found that Mr. Gewak had reached maximum medical improvement and "cannot return to his former position," but said that Mr. Gewak has a 23% permanent partial impairment and "would be capable of performing some sedentary work"); a report from Mr. Gewak's consulting physician Dr. DePerro (who "is of the opinion that the Injured Worker is permanently and totally disabled and unable to engage in any sustained remunerative employment"); the "functional capacity evaluation performed by Amy Rumrill" who found among "various other" things that Mr. Gewak currently has no skills for sedentary employment; and Sharon Valentine's vocational report.  Stipulated Ex. BB at 1-2.

{¶ 18} "After full consideration of the issue," and after noting that the 65-year-old Mr. Gewak's "entire work history consists of working for [Giant Eagle] for approximately 40 years as a meat cutter," the hearing officer determined that he "concurs with Ms. Valentine's opinion" and finds that Mr. Gewak "is permanently and totally disabled."  *Id. Compare, State ex rel. Gobich v. Indus. Comm.*, 103 Ohio St.3d 585, 588, 2004-Ohio-5990 ("the SHO recognized that it is not the capacity for remunerative employment that bars a PTD award.  It is the capacity for *sustained* remunerative employment") (emphasis in original; citations omitted).

{¶ 19} Under these circumstances, it would be paradoxical to suggest that the commission's acceptance of a conclusion presented by a vocational expert (Ms. Valentine, whose report the hearing officer found persuasive) is not supported by "some evidence."  The commission had some evidence, that is, even beyond Dr. DePerro's medical view, that with vocational rehabilitation "contraindicated," Mr. Gewak "would not be capable of engaging in any sustained, remunerative employment."   Stipulated Ex. AA, Valentine report at 5.

{¶ 20} So this is not *State ex rel. Gulley v. Indus. Comm. of Ohio*, 152 Ohio St.3d 412, 415, 2017-Ohio-9131, where the commission abused its discretion by summarily

rejecting reports that it incorrectly perceived as nullified by a (mis)perceived conflict of interest. Here, by contrast, the commission did not turn away any evidence out of hand, but found itself most persuaded by the Valentine report.

{¶ 21} That sort of evaluation or weighing is the commission's job. It is not required to credit any particular vocational report, "even if it is uncontradicted." *Id.* Indeed, although the hearing examiner's order on both pages adverted to Ms. Rumrill 's assessment, *see* Stipulated Ex. BB at 1, 2 (while also making a rather euphemistic reference to her "various other reasons" for finding Mr. Gewak not suitable for rehabilitation efforts), it was not required to make any such explicit reference at all. *See, e.g., State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 279, 2008-Ohio-3915 (unless the commission lists all the evidence before it, omitting only a particular document, "the commission need only enumerate the evidence relied upon to reach its decision," citing *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481, 483-84 (1983)).

{¶ 22} That is, "[t]he commission is not required to list or cite evidence that has been considered and rejected or explain why certain evidence was deemed unpersuasive." *Id.,* citing *State ex rel. DeMint v. Indus. Comm.*, 49 Ohio St.3d 19, 20 (1990). In exercising its own vocational expertise, it adopted Ms. Valentine's opinion. This it was fully empowered to do. *See, e.g., State ex rel. Jackson v. Indus. Comm. of Ohio*, 79 Ohio St.3d 266, 270-71 (1997) ("the commission * * * is not required to accept vocational evidence, even if uncontradicted * * * The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission *is* the expert on this issue").

{¶ 23} In this case, the hearing officer (who also heard directly from Mr. Gewak) was persuaded of Ms. Valentine's view. Stipulated Ex. BB at 2, citing Stipulated Ex. AA (Valentine report). And we note that if one "credit[s]" the Valentine report, as the commission is empowered to do, questions of whether or not Mr. Gewak would apply himself diligently to vocational rehabilitation efforts are rather aside from the point (even without regard to Mr. Gewak's explanation at the hearing of what he had meant to convey to Ms. Rumrill).

{¶ 24} The hearing officer agreed in his own way with Ms. Valentine's opinion (while also "considering the vast amount of physical restrictions outlined" by the doctors, *id.*), and the commission denied reconsideration of that finding. We do not read the governing precedents as requiring a more specific exegesis than the commission has provided. *See, e.g., DeMint*, 49 Ohio St.3d at 20 (obligation to give "some notice" as to reasoning and to point to the evidence relied on balances with "the desire to avoid unnecessary and repetitive explanations," citing *State, ex rel. Frigidaire Div., GM Corp. v. Indus. Comm.*, 35 Ohio St.3d 105 (1988); "The * * * district hearing officer's order satisfies *Mitchell* since it identifies [a certain] report as [the] evidence relied on and explains why compensation was denied").

{¶ 25} And for that reason, the commission's attempt now to reopen its deliberations through court order, after having denied reconsideration earlier, fails. "The commission's power to reconsider a previous decision * * * has limits" in the preconditions already recited. *Gobich*, 103 Ohio St.3d at 587 (adding at 588 that "evidentiary disagreements rarely establish an error as 'clear' "); *see also, e.g., State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 458-59 (1998) ("[c]ontinuing jurisdiction is not unlimited").

{¶ 26} We presume that the commission undertook its earlier decision on whether to grant reconsideration in good faith and conscientiously. "It is basic law, without need of citation, that the Industrial Commission has considerable discretion in the performance of its duties; that its actions are presumed to be valid and performed in good faith and judgment, unless shown to be otherwise; and that so long as there is some evidence in the file to support its findings and orders, this court will not overturn such." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170 (1987).

{¶ 27} The reconsideration process with its administratively constrained procedures would be obviated and the eventual, needed finality that it promotes would be frustrated were the commission permitted to revisit its own final determinations absent some showing of clear error, fraud, or the like. The Supreme Court of Ohio has been careful to guard against practices that "would effectively give the commission unrestricted jurisdiction." *Nicholls*, 81 Ohio St.3d at 459 (adding that "the mere possibility of unspecified error cannot sustain the invocation of continuing jurisdiction").

{¶ 28} And here, despite the commission's "[c]oncession," we have found that there was no requirement for the hearing officer to "explicitly address" the VocWorks position that, contrary to the opinion of Valentine VocRehab LLC with which he "concur[red]," Mr. Gewak productively could pursue vocational rehabilitation. The commission's new position otherwise, *see* Concession Brief at 4, is not correct as a matter of law, and so we are not bound either by the commission's "concession" as to the performance of its hearing officer or by the fact that the commission now seeks a reconsideration do-over.

* * * * * *

{¶ 29} As noted, this matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals; we append here the decision the magistrate issued, although we do not adopt it.

{¶ 30} The magistrate seems to have found the commission's Concession Brief conclusive. For the reasons explained above, we do not.

{¶ 31} The magistrate's first four findings of fact appropriately sketch the general procedural posture of the case. But after devoting significant space to describing and quoting passages of the Rumrill VocWorks assessment, the magistrate omits any mention of the Valentine VocRehab assessment with which the hearing officer actually "concurs." Giant Eagle has not argued here that the report of "Vocational Specialist" Valentine should be removed from the record, and the fact is that the Rumrill and Valentine reports to some extent conflict: one cannot agree with both in their entirety. *Compare, e.g.,* Stipulated Ex. T, VocWorks Jan. 27, 2017 report at 7 ("Once a release to return to work is secured, Richard may benefit from participation in a structured job search program in an attempt to locate a job within his physical capacities") *with* Stipulated Ex. AA, Valentine VocRehab Aug. 29, 2017 report at 3, 5 ("Mr. Gewak would not be a viable candidate for entry level, sedentary clerking related work. * * * <u>Vocational rehabilitation is contraindicated</u>").

{¶ 32} The commission's hearing officer was within his authority to cite to Ms. Rumrill's assessment of Mr. Gewak's current status (she found a "lack of skills for sedentary jobs," and the like, *see* Stipulated Ex. T, VocWorks report at 8), while agreeing more generally and in full with the Valentine assessment that offered no prospect of

future sustained remunerative employment.  He wrote that he "concurs with Ms. Valentine's opinion * * *."  Stipulated Ex. BB at 2. He was not required to cite to competing passages from Ms. Rumrill's report, *see, e.g., Scouler*, 119 Ohio St.3d at 279, and on this record, his decision to concur unconditionally in the Valentine opinion is not ours to make.

{¶ 33} The magistrate emphasized that "[t]he commission has filed a brief conceding that the SHO failed to address claimant's lack of participation in rehabilitation as well as whether or not he could reasonably develop other skills.  As such [sic], the commission asks this court to issue a writ of mandamus ordering the commission to consider those factors and redetermine whether or not claimant is entitled to any award of PTD compensation."  Mag.'s Decision at 4.  She then concluded that because it did not rely on her preferred passages, "it is clear the commission failed to consider all the vocational evidence in the report on which it relied," and recommended that mandamus issue. *Id.*

{¶ 34} Again, as already explained, we do not agree.  The commission is "the exclusive evaluator of evidentiary weight and disability.  Thus, when some evidence for the commission's decision exists, the decision must be upheld even if contradicted by other evidence a reviewing court considers more persuasive."  *Jackson*, 79 Ohio St.3d at 268, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

{¶ 35} Mr. Gewak's objections to the magistrate's decision urge that the commission did not abuse its discretion in granting his application for permanent total disability. He argues that the hearing officer did refer to the Rumrill report; that there is "some evidence" supporting the commission's decision; that the commission did not abuse its discretion; and that the magistrate did not find that the commission had abused its discretion (although in effect, she did).  Giant Eagle counters, opposing those arguments while again refraining from mentioning the Valentine opinion as favored by the hearing officer.

{¶ 36} The hearing officer's decision could have been more detailed and precise in further describing the texture of "Ms. Valentine's opinion."  But it did note Dr. DePerro's "opinion that the Injured Worker is permanently and totally disabled," and it did adopt "Ms. Valentine's opinion" in the course of further conveying the general sense (albeit not

the precise wording) of her view that vocational rehabilitation is "contraindicated" in light of all Mr. Gewak's relevant circumstances including all of his physical restrictions. Stipulated Ex. BB at 2; Stipulated Ex. AA at 5. The commission denied reconsideration, and there is some evidence to support its conclusion that Mr. Gewak "is precluded from engaging in all sustained remunerative employment, and thus permanently and totally disabled."

**CONCLUSION**

{¶ 37} We find that the commission had some evidence to support its conclusion and did not abuse its discretion. We therefore sustain Mr. Gewak's objections to the magistrate's decision to that extent; we reject the magistrate's decision for the reasons we have outlined; and we deny Giant Eagle's requested writ of mandamus.

*Objections sustained;*
*writ of mandamus denied.*

BRUNNER and BEATTY BLUNT, JJ., concur.

————————————————

# A P P E N D I X

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Giant Eagle, Inc., | : | |
| Relator, | : | |
| v. | : | No. 18AP-216 |
| Ohio Industrial Commission et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

#### Rendered on January 29, 2019

*Matty, Henrikson & Greve, Kirk R. Henrikson*, and *Jesse P. Kanner*, for relator.

*Dave Yost,* Attorney General, and *Jacquelyn McTigue,* for respondent Industrial Commission of Ohio.

*Heller, Maas, Moro, & Magill, Co. LPA*, and *Patrick J. Moro,* for respondent Richard Gewak.

### IN MANDAMUS

{¶ 38} Relator, Giant Eagle, Inc., has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding permanent total disability ("PTD") compensation to respondent, Richard Gewak ("claimant"), and ordering the commission to find that claimant is not entitled to that award.

Findings of Fact:

{¶ 39} 1. While employed as a meat cutter, claimant sustained a work-related injury on November 19, 2001 and his workers' compensation claim was allowed for the following conditions: "lumbar sprain/strain; L5-S1 disc herniation and aggravation of pre-existing spinal canal stenosis of the lumbar spine."

{¶ 40} 2. Claimant received conservative medical treatment for the allowed conditions and worked until 2014 when he underwent surgery involving:

> [W]ide decompression; stabilization; and fusion L2-3; C-arm disc decompression L3-4, L4-5, L5-S1; postop bone stimulator; back brace; and postop physical therapy.

{¶ 41} 3. Claimant received temporary total disability ("TTD") compensation following the surgery.

{¶ 42} 4. Relator filed a motion to terminate claimant's TTD compensation and, following a hearing before a staff hearing officer ("SHO") on June 22, 2016, claimant's TTD compensation was terminated based on a finding that his allowed conditions had reached maximum medical improvement ("MMI").

{¶ 43} 5. Based on the results of a functional capacity evaluation, claimant was referred for vocational rehabilitation.

{¶ 44} 6. In the vocational rehabilitation assessment report dated January 27, 2017, it was noted that claimant repeatedly indicated that he was not interested in working, that he did not believe there were any jobs which he could perform, and, as a result, he did not feel that he had to answer all the questions posed to him by the evaluator. Per the report, it was noted that claimant was receiving sufficient disability income to meet his financial needs. The evaluator identified the following assets and barriers to re-employment:

> **Assets to Employment**
>
> Richard has the following assets to employment: a high school diploma, ability to learn skills on the job like he did when he was a meat cutter, forty-five years of experience as a meat cutter, a valid driver's license and a reliable

automobile. Also, he was punctual to arrive as scheduled to the meeting with this evaluator.

**Barriers to Employment**

Richard has a work gap of more than two years. Currently he does not have a release to return to work from his physician of record. Since he may need to locate and apply for jobs in fields other than a meat cutter, he will need to learn how to answer questions pertaining to his injury. Richard states no motivation to return to work. He has a moderate focus on his pain as evidenced by his verbal reports that may impact his ability to work. He has physical limitations from the claim-related conditions. Richard has lead a sedentary lifestyle over the past two plus years which may also serve as a barrier to employment and may also impact his feasibility for vocational rehabilitation services. He also has non claim-related conditions of knee and leg arthritis, blood pressure, diabetes, and a left hip replacement.

{¶ 45} 7. Ultimately, it was determined that relator was not a good candidate for vocational rehabilitation.

{¶ 46} 8. Claimant filed an application for PTD compensation which was heard before an SHO on September 19, 2017. The SHO relied on medical reports to find that claimant would be capable of performing some sedentary employment. The SHO also relied on the ultimate conclusion of the vocational evaluator that claimant was not a good candidate for vocational rehabilitation, the claimant's age of 65 years, the fact that he had a high school education, could read, write, and perform basic math, and the fact that he had been employed as a meat cutter for approximately 40 years, and concluded that claimant was permanently and totally disabled.

{¶ 47} 9. Thereafter, relator filed the instant mandamus action in this court.

<u>Conclusions of Law</u>:

{¶ 48} For the reasons that follow, it is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to reconsider claimant's application after taking into account claimant's failure to address both claimant's lack of participation in rehabilitation and whether claimant could reasonably develop other skills.

{¶ 49} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 50} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 51} The commission has filed a brief conceding that the SHO failed to address claimant's lack of participation in rehabilitation as well as whether or not he could reasonably develop other skills. As such, the commission asks this court to issue a writ of mandamus ordering the commission to consider those factors and redetermine whether or not claimant is entitled to an award of PTD compensation. Claimant points out he was not found to be a feasible candidate for vocational rehabilitation.

{¶ 52} Because it is clear the commission failed to consider all the vocational evidence in the report on which it relied, it is this magistrate's decision that this court should issue a writ of mandamus ordering the commission to reconsider claimant's application for PTD compensation after considering claimant's lack of participation in vocational rehabilitation, and whether or not he could develop other skills that would help him obtain employment.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).