[Cite as *State ex rel. Denton v. Indus. Comm.*, 2019-Ohio-3173.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Patricia Denton, | : | |
| Relator, | : | |
| v. | : | No. 18AP-100 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on August 8, 2019

**On brief:** *Jurus Law Office,* and *Robert B. Bumgarner,* for relator. **Argued:** *Robert B. Bumgarner.*

**On brief***: Dave Yost,* Attorney General, and *Sherry M. Phillips,* for respondent Industrial Commission of Ohio. **Argued:** *Sherry M. Phillips.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Patricia Denton, has filed an original action seeking a writ of mandamus to order the Industrial Commission of Ohio ("commission") to vacate its order denying her application for permanent total disability ("PTD") compensation.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Denton previously sustained two work related injuries for which she received benefits under Ohio's workers' compensation system.

{¶ 3} First, in 1993, when she was employed by respondent Peyton, Inc., Denton had the following allowed claim: lumbar myositis; aggravation of pre-existing lumbar injury; herniated disc L4-5; lumbar spondylosis; intervertebral disc degeneration L4-5 and L5-S1; aggravation of dysthymia. (Claim No. 93-951.)

{¶ 4} Then, in 2007, Denton was injured in the course of her employment with respondent Safelite Auto Glass and had the following allowed claim: sprain left distal tibiofibular; sprain of left knee and leg; substantial aggravation of left knee medial femoral chondromalacia; substantial aggravation of subchondral cyst left knee. (Claim No. 07-350191.)

{¶ 5} On September 24, 2015, Denton filed an application for PTD compensation. At the time she applied, Denton was 73 years old and had not worked since 2011. (*See* Sept. 21, 2017 SHO Order at 1.) The staff hearing officer ("SHO") denied Denton's application for PTD compensation on September 21, 2017. The SHO reviewed "[a]ll file evidence" and considered it in reaching his conclusion. (SHO Order at 2.) The SHO reached the following conclusions before ultimately finding that Denton "is not permanently and totally disabled" and is not entitled to PTD compensation:

> Claimant retains the residual physical ability to perform up to light level employment.
>
> * * * Claimant retains the residual psychological capacity to perform any work that she is otherwise physically capable of performing, subject to the restrictions specified by Dr. Finnerty.
>
> * * * Claimant's age of 75 is a barrier to re-employment * * * [h]owever * * * this need not be an insurmountable barrier.
>
> * * * Claimant's level of education (tenth grade plus GED with business skills training) [is] a distinct asset to reemployment in that it is more than adequate for many entry level sedentary and light levels of employment.
>
> * * * Claimant's work history [is] an asset to re-employment in that it is indicative of an individual with a strong work ethic and stable work profile. * * *.
>
> * * * [T]here is no persuasive evidence in the file to indicate that the claimant, at the very least, would be incapable of obtaining new job skills (if needed) via on-the-job training.

(SHO Order at 2.)

{¶ 6} Denton filed a request for reconsideration, but it was denied by the commission on October 18, 2017.

{¶ 7}  Denton then filed this mandamus action.

{¶ 8}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who considered the action on its merits and issued a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate determined that the commission did not abuse its discretion in finding that Denton was not entitled to PTD compensation and has recommended that this court deny the request for a writ of mandamus.

{¶ 9}  Denton filed objections to the magistrate's decision.  First, Denton objects to the magistrate's finding that the record does not reflect that the commission failed to consider vocational evidence from the Bureau of Vocational Rehabilitation ("BVR").  Second, Denton objects to the magistrate's finding that the commission did not abuse its discretion because the BVR assumed Denton was only capable of sedentary work whereas the commission examiner found that she was capable of light work.

{¶ 10}  Denton argues that the commission wholly failed to consider the BVR, even though it was required to do so.  Denton posits that the SHO's failure to specifically identify the BVR report is evidence that the SHO failed to consider it.  Denton further argues that this evidence should have been considered in analyzing whether Denton could be retrained to perform light work.

## II. ANALYSIS

{¶ 11}  A relator must meet three requirements to be entitled to a writ of mandamus. She must show: (1) she has a clear legal right to the relief requested, (2) the party against whom the writ is sought is under a clear legal duty to perform the act requested, and (3) she has no plain and adequate remedy in the ordinary course of the law.  *State ex rel. Davis v. School Emps. Retirement Sys.*, 10th Dist. No. 08AP-214, 2008-Ohio-4719, ¶ 14.

{¶ 12}  "A clear legal right to a writ of mandamus exists when the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record."  *State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, ¶ 11, citing *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).  The court will not disturb the commission's decision if there is "some evidence" to support it.  *SER Fiber-Lite Corp. v. Indus. Comm.,* 36 Ohio St.3d 202 (1988); *State ex rel. Bennett v. Aldi, Inc.*, 10th Dist. No. 14AP-632, 2016-Ohio-83, ¶ 6.  " 'Where a Commission order is

No. 18AP-100

adequately explained and based on some evidence[,] * * * the order will not be disturbed as manifesting an abuse of discretion.' " *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.*, 109 Ohio St.3d 237, 2006-Ohio-2287, ¶ 9, quoting *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997).

{¶ 13} R.C. 4123.58 provides the mechanism for awarding a claimant PTD compensation. This compensation is meant " 'to compensate an injured worker for impairment of earning capacity, Ohio Adm.Code 4121-3-34(B)(1), and the benefits are paid until the employee's death, R.C. 4123.58(A).' " *State ex rel. Ohio Presbyterian Retirement Servs. v. Indus. Comm.*, 151 Ohio St.3d 92, 2017-Ohio-7577, ¶ 17. PTD compensation is broken down into two types: (1) compensation for a loss of two body parts, R.C. 4123.58(C)(1), which is not at issue here; and (2) compensation for a workplace injury that prevents the worker from "engaging in sustained remunerative employment," R.C. 4123.58(C)(2).

{¶ 14} The Supreme Court of Ohio has outlined the proper analysis in considering a PTD compensation application as follows:

> The relevant inquiry in determining permanent total disability is whether the claimant is able to perform sustained remunerative employment. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 170, 31 Ohio B. 369, 509 N.E.2d 946 (1987). In addition to the medical evidence, the commission must analyze nonmedical factors such as the claimant's age, education, and work record. The commission must also consider any other factors that might be important to the determination whether a claimant may return to the job market by using past employment skills or skills that may be reasonably developed. *Id.*

*State ex rel. Gulley v. Indus. Comm.*, 152 Ohio St.3d 412, 2017-Ohio-9131, ¶ 12.

{¶ 15} Turning to Denton's objections, we find that the record does not reflect that the commission wholly failed to consider the vocational evidence from the BVR in reaching its determination. There is no dispute that the SHO had the BVR report, submitted as part of the PTD application file. (*See* Relator's Aug. 7, 2018 Brief at 4, 7.) It was specifically referenced in the PTD application. (*See* Sept. 24, 2015 Application for PTD Compensation at 2.) In her application, Denton stated:

> I recently went through BVR. My BVR records were filed with the BWC. They said voc rehab [sic] was not feasible for me. They said my pace was too slow and I didn't understand the computer information. Therefore they closed my rehab [sic] file due to lack of progress.

(Sept. 24, 2015 Application for PTD Compensation at 2.)

{¶ 16} Denton concedes that the commission is "not required to accept vocational evidence and it has the discretion to accept or reject vocational evidence." Relator's Objs. at 7, citing *State ex rel. La Croix v. Indus. Comm.*, 144 Ohio St.3d 17, 2015-Ohio-2313; *State ex rel. Jackson v. Indus. Comm.*, 79 Ohio St.3d 266 (1997). Denton also concedes that the "[c]ommission needs only to enumerate the evidence it relied upon to reach its decision and that it does not need to list or cite all evidence that has been considered and rejected." Relator's Objs. at 7, citing *State ex rel. Mitchell v. Robbins & Myers, Inc.*, 6 Ohio St.3d 481 (1983); *State ex rel. Fultz v. Indus. Comm.*, 69 Ohio St.3d 327 (1994).

{¶ 17} Denton cites to *State ex rel. Gulley v. Indus. Comm.*, 152 Ohio St.3d 412, 2017-Ohio-9131, to support her objections. But *Gulley* does not support Denton's position. In *Gulley*, the commission expressly rejected a vocational professional's reports because it determined that the professional had a conflict of interest in that she had been hired by the claimant's attorney to assess the claimant for the PTD application. On appeal, the Supreme Court first acknowledged that "the commission has authority to reject a vocational report, even if it is uncontradicted." *Gulley* at ¶ 16, citing *State ex rel. Singleton v. Indus. Comm.*, 71 Ohio St.3d 117 (1994). The Supreme Court then found that the vocational professional's opinion was not tainted due to a conflict of interest. As a result, the Supreme Court held, specifically and narrowly, that "it was an abuse of discretion for the commission to reject McCoy's reports based on a conflict of interest." *Id.* at ¶ 17. Because the commission expressly and erroneously refused to consider the reports, the Supreme Court remanded the matter and "order[ed] the commission to review all the vocational evidence before determining whether [the claimant] is entitled to permanent-total-disability compensation." *Id.* at ¶ 18. This case is not like *Gulley*.

{¶ 18} As we have recognized, the commission does not violate the mandates of *Gulley* where it, like here, simply finds certain evidence more persuasive than other evidence as long as it "[does] not turn away any evidence out of hand." *State ex rel. Giant*

*Eagle v. Indus. Comm.*, 10th Dist. No. 18AP-216, 2019-Ohio-2135, ¶ 20. "That sort of evaluation or weighing is the commission's job." *Id.* at ¶ 21. As we noted in *Giant Eagle*, as the Supreme Court has continually held, and as relator here *expressly concedes*, the commission "[is] not required to make any * * * explicit reference" to a vocational assessment in its decision. *Id.*, citing *State ex rel. Scouler v. Indus. Comm.*, 119 Ohio St.3d 276, 2008-Ohio-3915, ¶ 16, and *State ex rel. Mitchell v. Robbins & Meyers, Inc.*, 6 Ohio St.3d 481, 483-84 (1983). Rather, "the commission need only enumerate the evidence relied upon to reach its decision." *Scouler* at ¶ 16; *Robbins & Meyers, Inc.* at 483 ("district hearing officers, as well as regional boards of review and the Industrial Commission, must specifically state which evidence *and only that evidence* which has been relied upon to reach their conclusion * * * " (emphasis added)). " 'The commission is not required to list or cite evidence that has been considered and rejected or explain why certain evidence was deemed unpersuasive.' " *Giant Eagle* at ¶ 22, quoting *Scouler* at ¶ 16; *see also Jackson* at 270-71 ("the commission * * * is not required to accept vocational evidence, even if uncontradicted * * *. The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, because the commission *is* the expert on this issue").

{¶ 19} In his order denying Denton's application, the SHO expressly stated that "**[a]ll** file evidence was reviewed and considered" in reaching his decision. (Emphasis added.) (SHO Order at 2.) Although he only highlighted two specific reports to support his determination that Denton could obtain light duty employment, there is nothing to suggest the SHO failed to consider all of the evidence as he represented. Instead, as the order states, there was no "persuasive" evidence to indicate Denton is unable to obtain a job. (SHO Order at 2.) Unlike in *Gulley*, the SHO did not erroneously refuse to consider the BVR report. Plainly, the SHO did not find the BVR report persuasive within the entire body of evidence submitted, and it was within the SHO's discretion to reject the evidence. The SHO acted properly in listing only the evidence it found persuasive to reach its decision. *See Scouler*; *Robbins & Meyers, Inc.*; *Giant Eagle*.

{¶ 20} Denton also argues that the BVR report was relevant to and should have been considered in the analysis of whether Denton could obtain light duty work. First, the court finds nothing to suggest that the SHO did not consider the report as part of this analysis.

No. 18AP-100

In addition, as the magistrate noted, the BVR report, by its own language, operated under the assumption that Denton was only able to perform sedentary work.  The report found there was no feasible employment goal for Denton because "virtually all sedentary jobs require use of a computer[.]"  (Aug. 12, 2015 BVR Report Cvr. Letter.)  The BVR expressly discounted the possibility that Denton could be a greeter, ticket taker, or security personnel —all light duty jobs—because "these jobs typically require some cleaning, stock work or walking the property."  (BVR Report at 1.)  As such, the BVR assumed Denton could not perform light duty work and never considered whether she could be employed in a light duty work position.  The physical and psychological professionals who examined Denton never suggested that she was incapable of performing light duty work.  To the contrary, they found she *could* perform light duty work.  Nonetheless, the BVR expressly assumed and determined that Denton was "limited to sedentary work" and did "not have marketable skills for sedentary work."  (BVR Report at 1.)  Relying on these unfounded assumptions, the BVR foreclosed the possibility of evaluating whether Denton was capable of light duty work.  This failure to consider whether Denton was capable of performing light duty work decreased the relevancy of the BVR report in analyzing Denton's ability to obtain sustained remunerative employment.  As such, the SHO's failure to rely on the report as persuasive evidence was not an abuse of discretion.

{¶ 21} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ.R. 53, and due consideration of Denton's objections, we overrule the objections.  Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and we deny the relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

BRUNNER and NELSON, JJ., concur.

No. 18AP-100

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel.<br>Patricia Denton, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 18AP-100 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

**M A G I S T R A T E ' S   D E C I S I O N**

**Rendered on January 29, 2019**

*Jurus Law Office,* and *Robert B. Bumgarner,* for relator.

*Dave Yost,* Attorney General, and *Sherry M. Phillips,* for respondent.

IN MANDAMUS

{¶ 22} Relator, Patricia Denton, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation, and ordering the commission to reconsider that decision after properly considering all of the vocational evidence including the records from the Bureau of Vocational Rehabilitation ("BVR").

Findings of Fact:

{¶ 23} 1. Claimant has sustained two work-related injuries, the first in 1993, and the second in 2007. Her workers' compensation claims have been allowed for the following conditions:

> Claim 93-951: Lumbar myositis; aggravation of pre-existing lumbar injury; herniated disc L4-5; lumbar spondylosis; intervertebral disc degeneration L4-5 and L5-S1; aggravation of dysthymia.
>
> Claim Number 07-350191: Sprain left distal tibiofibular; sprain of left knee and leg; substantial aggravation of left knee medial femoral chondromalacia; substantial aggravation of subchondral cyst left knee.

{¶ 24} 2. Relator requested and was referred for vocational rehabilitation with the BVR in 2015. At that time, it was presumed that she could perform no more than sedentary work activity. As such, all rehabilitation efforts focused exclusively on whether relator could return to sedentary employment.

{¶ 25} 3. In a letter dated August 12, 2015, relator was notified that her rehabilitation file was being closed for the following reasons:

> Patricia's case is being closed at this time, due to lack of progress. She was referred for computer training, but was not successful due to difficulty with understanding and retraining information. Because virtually all sedentary jobs require use of a computer to record or process information, we were not able to identify a feasible goal for her. We briefly talked about the idea of a greeter, ticket taker, or security position, but these jobs typically require some cleaning, stock work or walking the property. [Vocational Rehabilitation Counselor] met with Patricia and [Functional Training Services] staff to discuss case closure. She was in agreement.

(Emphasis added.)

{¶ 26} 4. On September 24, 2015, relator filed her application for PTD compensation. At the time, relator was 73 years old. According to her application, she had completed tenth grade, had received her GED, and had training in business skills as well as word processing; and she was capable of reading, writing, and performing basic

math.  Relator indicated that she had filed for Social Security Disability benefits and she last worked in 2011.

{¶ 27} 5. Relator was examined by Robert G. Stanko, M.D.  In his February 15, 2017 report, Dr. Stanko identified the allowed conditions in relator's claim, discussed medical records which he reviewed, provided his physical findings on examination, and concluded that relator's allowed physical conditions had reached maximum medical improvement ("MMI").  Dr. Stanko also opined that relator had a 22 percent whole person impairment, and that she was capable of performing light-duty work.

{¶ 28} 6. Todd Finnerty, Psy-D, examined relator for her allowed psychological conditions.  In his February 23, 2017 report, Dr. Finnerty identified the allowed conditions in relator's claim, discussed the medical records which he reviewed, provided his findings following his mental status examination, and determined that relator was moderately impaired in all four functional areas:  activities of daily living, social functioning, adaptation, as well as concentration, persistence, and pace.  Thereafter, Dr. Finnerty opined that relator had a class three moderate impairment of 25 percent as concerns her allowed psychological conditions and that she was capable of working with the following limitations:

> She can sustain a static set of tasks without fast pace or frequent changes which may exacerbate maladaptive responses to stress. She can interact with others briefly and superficially.

{¶ 29} 7. Vocational consultant Molly S. Williams, performed a vocational review. In her April 10, 2017 report, Ms. Williams used the findings of Drs. Stanko and Finnerty as well as her past relevant work as a customer service representative in making her assessment.  Ms. Williams ultimately concluded that given relator's age and the completion of her GED in the remote past, that she had no transferrable skills.  As a result, Ms. Williams concluded that relator should be found to be permanently and totally disabled.

{¶ 30} 8. Relator's application was heard before a staff hearing officer ("SHO") on September 21, 2017.  The SHO noted that relator was currently 75 years old, that she had a tenth grade education but had completed her GED in 1986, and had worked as a customer service representative from 1988 to 2011, having last worked in May 2011.

Thereafter, the SHO relied on the medical reports of Drs. Stanko and Finnerty, and concluded that she could perform light-duty work with the limitations imposed by Dr. Finnerty. Thereafter, the SHO found that relator's age was a barrier to re-employment but that it was not insurmountable. The SHO determined that relator's education plus her business skills training was a distinct asset to re-employment and was more than adequate for many entry-level, sedentary, and light-duty jobs. Further, the SHO determined that relator's work history was an asset, that she showed a strong work ethic, a stable work profile, and that all things considered, she was not permanently and totally disabled. With regard to her vocational rehabilitation efforts, the SHO made the following finding:

> The SHO also finds that there is no persuasive evidence in file to indicate that the claimant, at the very least, would be incapable of obtaining new job skills (if needed) via on-the-job training.

{¶ 31} 9. Relator filed a request for reconsideration arguing that the SHO made two mistakes of fact: finding no persuasive evidence, relator would be incapable of obtaining new job skills, and that her past work in customer service was consistent with Dr. Finnerty's restrictions.

{¶ 32} 10. Relator's request for reconsideration was denied by order of the commission mailed October 28, 2017.

{¶ 33} 11. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 34} For the reasons that follow, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion and this court should deny relator's request for a writ of mandamus.

{¶ 35} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

No. 18AP-100

{¶ 36} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 37} In this mandamus action, relator challenges the commission's finding that there was "no persuasive evidence in file to indicate that the claimant, at the very least, would be incapable of obtaining new job skills (if needed) via on-the-job training." In support of that argument, relator directs this court's attention to the BVR closure report dated August 12, 2015.

{¶ 38} In 2015, when the BVR considered relator for vocational rehabilitation services, the BVR began with the assumption that relator was limited exclusively to sedentary jobs. Based on a finding that virtually all sedentary jobs require the use of a computer to record or process information and relator's inability to successfully complete computer training, the BVR concluded there were no sedentary jobs which she could perform. Specifically, the vocational rehabilitation counselor stated:

> She was referred for computer training, but was not successful due to difficulty with understanding and retaining information. Because virtually all sedentary jobs require use of a computer to record or process information, we were not able to identify a feasible goal for her.

{¶ 39} Although they did discuss jobs such as greeter, ticket taker, or security, because those jobs would require some cleaning, stock work, or walking, it was decided that relator's vocational rehabilitation file should be closed. Specifically, the vocational rehabilitation counselor stated:

> We briefly talked about the idea of a greeter, ticket taker, or security position, but these jobs typically require some

> cleaning, stock work or walking the property. [Vocational Rehabilitation Counselor] met with Patricia and [Functional Training Services] staff to discuss case closure. She was in agreement.

{¶ 40} The BVR never considered whether or not relator would be capable of performing light-duty jobs which may or may not require the learning of any new skills or the availability of any transferrable skills. Further, the BVR never considered whether relator could acquire skills which can be learned via on-the-job training. Given that the commission relied on medical evidence that relator was capable of performing light-duty work, and not solely sedentary work, the magistrate finds the commission did not abuse its discretion by finding there was no persuasive vocational evidence to indicate that relator would not be able to obtain new job skills via on-the-job training.

{¶ 41} Relator cites the following sentence from *State ex rel. Gulley v. Indus. Comm.,* 152 Ohio St.3d 412, 2017-Ohio-9131:

> Although the commission is not bound to accept all vocational evidence in the record, it is required to review the evidence to determine whether the claimant is foreclosed from sustained remunerative employment.

{¶ 42} In reading this, it must be remembered that the commission had specifically excluded the vocational evidence from any consideration finding a conflict of interest. The Supreme Court found the commission abused its discretion in finding a conflict of interest and ordered the commission to rehear the matter and consider the purposely rejected vocational evidence. *Gulley* did not change the law concerning the duty of the commission to consider all evidence before it nor did it change the responsibility for the commission to identify the evidence on which it relied and provide a brief explanation. The record simply does not reflect relator's argument that the commission failed to consider the vocational evidence.

{¶ 43} For the above stated reasons, it is this magistrate's decision that relator has not demonstrated the commission abused its discretion when it determined that, inasmuch as the vocational evidence only considered relator's ability to be re-employed in a sedentary capacity and did not consider whether or not she had the ability to learn on the job, there was a lack of persuasive vocational evidence indicating that relator could

No. 18AP-100

not learn on the job.  As such, this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).